UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LARRY BRANDON BENGE,

    Plaintiff,

  v.                                            CAUSE NO. 3:20-CV-699-DRL-MGG

HYATTE,

    Defendant.

OPINION & ORDER

Larry Brandon Benge, a prisoner without a lawyer, filed two more motions for preliminary injunction seeking a change in his housing assignment. ECF 11; ECF 12. He is currently proceeding on an Eighth Amendment claim for injunctive relief against Warden William Hyatte[1] to provide adequate protection from identified gang members that have threatened to harm or kill him. ECF 5. He alleges that he was attacked twice in September, that he notified staff of the attacks and his need for medical attention, and that he received no assistance. He wants to be moved from an idle unit to a program unit until he can be transferred to another facility, because he believes it is less likely he will be attacked there. As ordered, Warden Hyatte filed a response.

As previously explained, "[t]he purpose of preliminary injunctive relief is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998)

---

[1] While sued as Superintendent Hyatte, his correct title is Warden, and this order will refer to him by that title.

(quotations and citations omitted). "In order to obtain a preliminary injunction, the moving party must show that: (1) they are reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest." *Joelner v. Village of Washington Park*, 378 F.3d 613, 619 (7th Cir. 2004). "A potential injury is irreparable when the threatened harm would impair the court's ability to grant an effective remedy." *EnVerve, Inc. v. Unger Meat Co.*, 779 F. Supp. 2d 840, 844 (N.D. Ill. 2011). "Irreparable harm is harm which cannot be repaired, retrieved, put down again, [or] atoned for. The injury must be of a particular nature, so that compensation in money cannot atone for it." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997) (citations and quotations omitted).

In an earlier order (ECF 10), the court noted that Mr. Benge began having problems with other offenders in April 2019, shortly after he was released to general population. On June 20, 2019, Miami's Protective Custody Committee recommended that Mr. Benge be transferred to another Indiana Department of Correction facility and placed in protective custody. Miami Correctional Facility does not have a protective custody unit. At that time, Mr. Benge was housed in AHU – the housing unit used for offenders pending a determination of whether protective custody is appropriate.

On July 2, 2019, Mr. Benge was assaulted. He reported the assault the next day, and staff ensured that he received medical treatment. During October 2019, Mr. Benge was involved in several incidents with offenders outside his housing unit. In March 2020,

2

he was assaulted once more, but the offenders that assaulted him were again from another housing unit. Mr. Benge reported to staff that he was okay because the attacker was not in his housing unit. On March 26, 2020, Mr. Benge was approved for transfer. But, by this time, the Covid-19 pandemic had resulted in lock downs and created additional concerns regarding transferring inmates.

On April 22, 2020, Mr. Benge again requested protective custody. UTM Angle reviewed his request, but he determined that the surveillance video was inconclusive, and that Mr. Benge's injuries were inconsistent with his report. Nonetheless, he was moved to housing unit H pending his transfer.

Following a conduct violation, Mr. Benge was moved to another housing unit – housing unit C. He asked to be moved from unit C, but custody staff observed Mr. Benge and concluded that his behavior was inconsistent with the fear he reported.

On August 7, 2020, Mr. Benge was found to have wounds requiring medical attention. According to Mr. Benge, he was stabbed in the face. It was unclear from Mr. Benge's complaint if any steps were taken to protect him following this attack. But Warden Hyatte reports that Mr. Benge was moved to yet another housing unit as a precaution.

In his current motions for injunctive relief, Mr. Benge reports that he was attacked twice more in September. He indicates that his face was cut on one occasion and that he was hit through the tray slot on his cell on another occasion. Mr. Benge, however, has provided few additional details regarding the nature of the alleged attacks, the identify of his attackers, the names of the staff he told about the attacks or his need for medical

care, or the extent of his injuries. The prison's records do not show that any incident reports were completed for these attacks, and there is no record that Mr. Benge has received any medical care for injuries stemming from the attacks. Due to the current pandemic, the facility remains on lockdown. There is very little offender movement other than going to the shower. Jail staff conduct offender counts six times a day, ensuring all offenders are accounted for and well. It is still expected that Mr. Benge will be transferred, but a date is not scheduled. According to Warden Hyatte, pending Mr. Benge's transfer, his housing assignment will continue to be monitored and will be changed, if needed.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). Here, it is undisputed that Mr. Benge should be placed in protective custody. However, his transfer has not taken place due to the current pandemic. The record reflects that, on several occasions, Mr. Benge has sought protective custody or been found with injuries, and prison staff adjusted his housing assignment. The pandemic that has delayed Mr. Benge's transfer has, however, resulted in a lockdown that has reduced the risk of harm for Mr. Benge by curtailing the amount of contact inmates have with one another. It is clear that there is a general threat to Mr. Benge's safety, but prison staff have taken steps to address that threat; and Mr. Benge has not identified any specific threat to his safety to which jail staff have failed to respond. General requests for help and expressions of fear are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008). On the current record, the court cannot conclude that staff have

acted with deliberate indifference to his safety or that Mr. Benge will suffer irreparable harm absent injunctive relief.

Furthermore, with respect to the competing and public interests, unnecessary intrusions into the management of prisons are generally disfavored. *See* 18 U.S.C. § 3626(a) (prison-related injunctions must be necessary to remedy the violation and narrowly tailored); *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) ("Prison officials have broad administrative and discretionary authority over the institutions they manage."). This is particularly true here, given the acknowledgement that Mr. Benge should be placed in protective custody and the unusual circumstances of the current pandemic.

For these reasons, the court DENIES the motions for a preliminary injunction. ECF 11; ECF 12.

SO ORDERED.

October 2, 2020 *s/ Damon R. Leichty*
Judge, United States District Court